**BROUGHER AGENCY, INC., Underwriting Members of Lloyds of London, and Bruce Donald Shepherd and Lucy Jane Barker, Representative Underwriters of the Underwriting Members of Lloyds of London, Appellant–Defendants,**

v.

**UNITED HOME LIFE INSURANCE COMPANY, Appellee–Plaintiff.**

No. 41A05–9301–CV–27 [1].

Court of Appeals of Indiana,
First District.

Nov. 1, 1993.

1. This case was diverted to this office on Sep- tember 20, 1993, by direction of the Chief Judge.

Edward O. DeLaney, Peter J. Rusthoven, Howard E. Kochell, Barnes & Thornburg, Indianapolis, for Brougher Agency.

Robert M. Baker III, Johnson, Smith, Densborn, Wright & Heath, Indianapolis, for Underwriting Members of Lloyds of London, and Bruce Donald Shepherd and Lucy Jane Barker.

John S. Beeman, Patricia Polis McCrory, Douglas A. Tresslar, Harrison & Moberly, Indianapolis, for United Home Life Ins. Co.

BAKER, Judge.

Today we decide the scope of an arbitration panel's authority and the effect of its award upon subsequent litigation. Appellant-defendants Underwriting Members of Lloyds of London, and Bruce Donald Shepherd and Lucy Jane Barker, Representative Underwriters of the Underwriting Members of Lloyds of London (collectively

Lloyds), and Brougher Agency, Inc. appeal the trial court's denial of their motions for summary judgment against United Home Life Insurance Co. (UHL), appellee-plaintiff. Lloyds and Brougher contend the arbitration panel's decision on two contract claims precludes UHL from litigating its fraud allegation. We agree and reverse the denial of summary judgment.

## ISSUES

The certified issues on interlocutory appeal are:

1. Whether the issues of fact raised by [UHL]'s allegations of fraud in Count III have already been considered and decided by the arbitrators, and therefore, whether there are no material issues of fact remaining unresolved, so that [Lloyds is] entitled to judgment on Count III as a matter of law.

2. Whether the findings and conclusions of the arbitrators on the issue of agency and misrepresentation are res judicata as to Count III, and therefore, whether there are no material issues of fact remaining unresolved to preclude an award of summary judgment on Count III.

3. Whether, as to Brougher, the findings and conclusions of the arbitrators concerning the issue of misrepresentation are binding against [UHL] as collateral estoppel, and therefore, whether summary judgment in favor of [Lloyds] on the issue of misrepresentation should also entitle Brougher to summary judgment.

Record at 733.

## FACTS

UHL is a life insurance company based in Greenwood, Indiana. In 1978, UHL entered into a general agency agreement with Brougher, an agency which sells group life insurance policies to small, self-insured companies. UHL provided the coverage on the policies Brougher drafted and sold. The group life policies contained a waiver of premium (WOP) provision, which allowed a policy holder under age sixty to maintain coverage without paying premiums if he became totally disabled.

In 1981, UHL decided to obtain reinsurance to cap its potential liability with Brougher's accounts. Because Brougher was UHL's agent and an intermediary with Lloyds, it handled the negotiations to obtain reinsurance for UHL from Lloyds. Lloyds issued a stop loss reinsurance treaty covering UHL for 1981. Under the treaty, UHL would pay benefits under its group life insurance policies up to a certain amount, called the retention level; thereafter, Lloyds would reimburse UHL for benefits paid exceeding the retention level. Subsequently, UHL and Lloyds entered treaties covering 1982 and 1983.

UHL submitted claims to Lloyds for reimbursement, including claims for approximately $264,000 of death benefits paid in years after the treaty period expired. Lloyds refused reinsurance of death benefits paid in later years for insureds who became disabled in 1982 or 1983 while the treaties were in effect but did not die until the treaty expired. The parties dispute whether the death benefits UHL paid after the treaties expired for disabled insureds under the WOP provision triggered during the treaty period should be included in calculating the retention level, or whether the calculation was limited to death benefits actually paid during the treaty period.

In 1988, UHL filed a complaint asserting three counts. Count I sought a declaratory judgment to construe the treaties to find Lloyds obligated to reinsure UHL and that Brougher was Lloyd's agent whose representations of coverage modified the treaties. Count II sought compensatory damages from Lloyds and Brougher. Count III sought punitive damages from Lloyds and its alleged agent, Brougher, for Brougher's willful and wanton misrepresentations. Lloyds requested arbitration of the dispute, which the trial court denied. However, in *Lloyds of London v. United Home Life* (1990), Ind.App., 549 N.E.2d 67 (*Lloyds I*), we stayed litigation pending arbitration of Counts I and II. The supreme court summarily affirmed and adopted our opinion. *See Lloyds of Lon-*

*don v. United Home Life* (1990), Ind., 563 N.E.2d 609 (*Lloyds II*).

An arbitration hearing was held October 22 and 23, 1991. Brougher was not a party to the arbitration. The arbitrators awarded judgment to Lloyds, and the trial court confirmed the decision. Lloyds and Brougher filed motions for summary judgment in light of the arbitration decision. The trial court granted summary judgment in favor of Lloyds and Brougher on Counts I and II, but denied summary judgment on Count III. On February 10, 1993, the trial court certified Lloyds' and Brougher's interlocutory appeal, challenging the denial of their motions for summary judgment on Count III. We accepted the interlocutory appeal on May 20, 1993. In *Lloyds I*, we stated with foresight, "The dispute can be largely settled through a determination of Counts I and II. If UHL is unsuccessful in arbitration, judicial action becomes unnecessary." *Lloyds I* at 71. Our unheeded direction brings us presently to this appeal.

### DISCUSSION AND DECISION

#### I. Standard of Review

■ In reviewing the denial of a motion for summary judgment, we apply the same standard as the trial court. *City of Evansville v. Moore* (1990), Ind., 563 N.E.2d 113, 114. Summary judgment is proper only if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Id.;* Ind.Trial Rule 56(C).

#### II. Res Judicata

■ Lloyds contends it was entitled to summary judgment on Count III based upon res judicata. This doctrine provides that a judgment on the merits is an absolute bar to a subsequent action between the same parties on the same claim. *Sullivan v. American Casualty Co.* (1992), Ind., 605 N.E.2d 134, 137. Issues determined in arbitration are binding and conclusive and may bar subsequent litigation of the issues. *United States Fidelity & Guaranty Co. v. DeFluiter* (1983), Ind.App., 456 N.E.2d 429, 432; IND.CODE 34-4-2-15 (judgment on arbitration award enforced as any other judgment).

The arbitration panel made the following findings:

1. [Brougher] was not an agent of [Lloyds] except as to specific ministerial acts in administering the contract, none of which affect the coverage question herein.

2. Brougher had no "binding authority" on behalf of [Lloyds] applicable to this contract and whatever preliminary informal negotiations or documents may have existed were merged into and extinguished by the execution of the formal treaties which both parties accepted as embodying the coverages and controlling the calculations of losses payable.

. . . . .

4. Any statements by Brougher personally, either in preliminary discussions, during the treaty periods or in subsequent attempts to assist UHL in collecting or adjusting the disputed claims, were inoperative to change the formal treaty terms.

. . . . .

6. There was no fraud by either party.

Record at 227–34. Based upon these findings and res judicata, Lloyds maintains no genuine issues of material fact remain and that it is entitled to judgment as a matter of law. Conversely, UHL defends the trial court's denial of summary judgment by asserting that the above-stated findings were unnecessary to the arbitration award. UHL maintains the arbitration panel exceeded its scope of authority in deciding the fraud issues. UHL further argues that the panel did not consider its constructive fraud claim against Lloyds.[2]

**2.** During oral argument on October 18, 1993, UHL changed the basis of its argument on its actual fraud claim and argued that the panel's finding of no agency was made strictly in the context of contract interpretation and did not affect its fraud claim. UHL cited *Lloyds I* for support, "To be successful on its punitive damages claim, UHL must prove the existence of a separate tort outside the breach of contract it alleges Lloyds committed.... Because the pu-

■ Indiana's Uniform Arbitration Act, I.C. 34–4–2–1—22, does not set forth which issues are subject to arbitration. Instead, the parties' arbitration agreement governs the conditions, limitations, and restrictions upon an arbitrator in making an award. *International Brotherhood of Electrical Workers v. Citizens Gas & Coke Utility* (1981), Ind.App., 428 N.E.2d 1320, 1324–25. "[P]arties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication." *Id.* at 1325. Since arbitration arises through contract, the parties are free to define what questions may be arbitrated. *Fort Wayne Education Association, Inc. v. Board of School Trustees of the Fort Wayne Community Schools* (1991), Ind.App., 569 N.E.2d 672, 676.

UHL submitted the following issues for arbitration:

. . . . .

2. Whether Brougher is the agent of Lloyds.

3. Whether the representations of Brougher obligated Lloyds to provide Reinsurance to [UHL] for [UHL] waiver of premium claimants regardless of when the claimants died.

. . . . .

Record at 129. Since UHL agreed to have the above-stated issues determined by arbitration, the arbitration panel did not exceed its authority in deciding them. Our conclusion is consistent with our determination in *Lloyds I* that Article 15 of the treaties provided for arbitration of disputes about the interpretation of the treaties. *Lloyds I* at 69. In *Lloyds I*, we withheld only the punitive damages claim in Count III from arbitration, which UHL sought for Brougher's alleged willful and wanton misrepresentations. *Id.* at 70.

The arbitration panel's resolution of Brougher's relationship with UHL and Lloyds was necessary for its determination of Counts I and II. In Count I, UHL requested a declaratory judgment that "[Brougher] was the agent and authorized representative of [Lloyds] and that the representations of [Brougher] are binding upon [Lloyds]." Record at 13. As noted above, UHL specifically submitted the questions of agency to arbitration. Record at 129. Since the arbitration panel already necessarily determined that Brougher was not Lloyds' agent, an element of UHL's actual fraud claim is negated. Because a party need only demonstrate the failure of one element of a claim, we find that Lloyds was entitled to summary judgment on Count III as a matter of law. *See Moore v. Sitzmark Corp.* (1990), Ind.App., 555 N.E.2d 1305, 1307.

UHL also maintains that the arbitration panel's finding no. 6 that there was no fraud by either party was unnecessary for its decision, and thus not binding, and that the panel did not decide its constructive fraud claim. This contention fails because UHL's constructive fraud claim against Lloyds was premised upon an agency theory. *See* Record at 554. Because the panel found no agency relationship between Brougher and Lloyds, an element of that claim also fails.

■ UHL next contends that it presented evidence of Lloyds' material misrepresentations by Brougher, as its intermediary, not as its agent. UHL contends that Lloyds communicated a misrepresentation through Brougher. This argument does not withstand the "straight face" test, as it is no more than a restatement of its agency theory. It is particularly transparent in light of UHL's improper argument that the arbitration decision on the agency issue is incorrect. *See* Appellee's Brief at 29. Once a factual question is determined in

---

nitive damages claim involves separate proof and is a separate damage award,. . . ." *Lloyds I* at 70. Nonetheless, we reject UHL's contention because it impermissibly raises a new theory not presented in its appellate briefs and because assigning a new label to the claims cannot avoid the binding effect of an arbitration decision.

*See Schattner v. Girard, Inc.* (D.C.Cir.1982), 668 F.2d 1366, 1368. Our *Lloyds I* statement UHL relies upon is correct, but once a factual issue is determined negating an element of the separate tort claim—here, the finding of no fraud—the tort claim must fall.

arbitration, it is finally adjudicated and cannot be relitigated. *DeFluiter* at 432.

■ In its appellee brief and at oral argument, UHL argued Lloyds' silence was a misrepresentation for which it is liable under a constructive fraud theory. UHL asserts that Lloyds knew UHL desired coverage for WOP insureds' claims and should have inquired, under its duty of good faith, as to what UHL believed Lloyds was insuring. The constructive fraud-silence theory was not designated to the trial court for summary judgment. We may not consider this theory due to UHL's failure to follow Ind.Trial Rule 56(C).

We conclude the arbitration decision is res judicata on the issues of agency and fraud pertaining to Lloyds; thus, we remand for the trial court to enter summary judgment for Lloyds on Count III.

### III. Collateral Estoppel

■ Because Brougher was not a party to the arbitration, it seeks defensive use of collateral estoppel to support its claim that the trial court should have granted summary judgment in its favor on Count III.

■ Collateral estoppel differs from res judicata in that the subsequent action is not between the same parties on the same claim. *Sullivan v. American Casualty Co.* (1992), Ind., 605 N.E.2d 134, 137. Collateral estoppel bars relitigation of the same facts or issues where those facts or issues were necessarily adjudicated in a former suit and the same facts or issues are presented in the subsequent litigation. *Id.*[3] Thus, if UHL had a full and fair opportunity to litigate the issues in its arbitration with Lloyds, then it is collaterally estopped from relitigating the same issues against Brougher, unless it would be unfair under the circumstances to permit Brougher to assert a collateral estoppel defense. *Id.* at 138; *White* at 142.

In Count III, UHL claimed that Brougher was Lloyd's authorized representative and agent. Record at 9, 11–12, 14. UHL further asserted that Brougher, as Lloyds'

agent, willfully and wantonly misrepresented the treaties' coverage. To the contrary, the arbitration panel found that Brougher was not Lloyds' agent. The panel also found, as Brougher asserts, that Brougher did not make any fraudulent misrepresentations. The panel found, "There was no fraud by either party." Record at 234. Although it appears at first glance that the finding refers only to UHL and Lloyds because Brougher was not a party to the arbitration, no allegations of fraud were asserted against UHL. Therefore, the finding is referring to the parties of the transactions, not the parties of the arbitration. The reasonable interpretation of this finding is that Brougher did not make any statements that were fraudulent during the transactions.

In defense of the denial of Brougher's summary judgment motion, UHL cites the panel's general disclaimer that, "We make no findings as to actual or probable occurrence of the statements attributed to Brougher." Record at 233. However, the arbitration panel specifically determined that the alleged statements were not fraudulent. Record at 234.

Although the factual issue of whether Brougher made any misrepresentations to UHL was not resolved in arbitration, another element of UHL's fraud claim against Brougher was negated. The panel found the *alleged* statements did not constitute fraud. UHL had a full and fair opportunity to litigate the issue in its arbitration with Lloyds, and it is fair under the circumstances to permit Brougher's defensive use of collateral estoppel. The arbitration decision on the issue is binding upon UHL and cannot be relitigated in a claim against Brougher. Because UHL's claim against Brougher in Count III is based upon the fraudulent nature of the alleged statements, an element that has been negated, Brougher is entitled to summary judgment on Count III as a matter of law.

In the context of the certified issues, the arbitrators conclusively decided the agency

---

**3.** Indiana no longer requires mutuality and identity of parties to assert a defensive use of collateral estoppel. *Id.; White v. Allstate Insurance Co.* (1992), Ind., 605 N.E.2d 141, 142.

issue consequently negating an element of UHL's fraud claim against Lloyds. With respect to Brougher, the arbitrators found that none of the alleged statements attributed to Brougher constituted fraud. Therefore, any actual or constructive fraud claims fail against both Lloyds and Brougher. Regardless of any remaining issue as to whether Brougher actually made the alleged statements, Lloyds and Brougher are entitled to summary judgment on Count III as a matter of law.

Judgment reversed and remanded for entry of summary judgment on Count III in favor of Lloyds and Brougher.

SHARPNACK, C.J., and NAJAM, J., concur.