FOR PUBLICATION

ATTORNEY FOR APPELLANT
: 
ATTORNEY FOR APPELLEE
:

PETER CAMPBELL KING WILLIAM H. STONE

Cline, King & King, P.C. Columbus, Indiana

Columbus, Indiana 

IN THE

COURT OF APPEALS OF INDIANA

SIHO, )

)

Appellant-Defendant, )

)

vs. ) No.  03A05-9704-CV-148

)

ALICE G. GEORGE, As Executor Under the )

Last Will and Testament of Vernon L. George, )

Deceased, and As Personal Representative of )

the Estate of Vernon L. George, Deceased, )

)

Appellee-Plaintiff. )

APPEAL FROM THE BARTHOLOMEW SUPERIOR COURT

The Honorable Norman D. Curry, Judge

Cause No.  03D02-9609-CP-199

June 30, 1998

OPINION - FOR PUBLICATION

RUCKER, Judge

This case involves the interpretation of an employment benefit plan ("Plan") regulated under ERISA.  Appellant-Defendant Southern Indiana Health Operations, Inc. ("SIHO") appeals from the trial court's grant of summary judgment in favor of Appellee-Plaintiff Alice G. George, executrix and personal representative of Vernon L. George's estate ("Representative").  SIHO raises six issues for our review, two of which are dispositive.  We consolidate and rephrase the issues as follows:  (1) did the trial court err by not deferring to the Plan Administrator's interpretation of the Plan, and (2) was the Plan Administrator's interpretation of the Plan arbitrary or capricious?

In July 1996 Vernon George was severely injured in an automobile collision caused by an uninsured motorist.  George, a retiree, was a participant in a self-funded group benefit plan ("Plan") provided by his former employer, the Cummins Engine Company.  The Plan is regulated by the Employee Retirement Income Security Act (ERISA)
(footnote: 1) and Cummins Engine is the Plan Administrator ("Administrator").  Pursuant to the Plan SIHO, as the Claims Administrator, paid medical expenses on George's behalf  totaling $70,820.00.  At the time of the collision George also carried uninsured motorist coverage with American States Preferred Insurance Company.  At some point George settled his uninsured motorist claim and received $145,000.00 from American States.  SIHO asserted a subrogation lien against the settlement proceeds in the amount of $46,426.00 which represented the amount of medical payments it made on behalf of George less its share of attorneys fees and expenses.
(footnote: 2)  SIHO based its claim on the Third Party Recovery Provision contained in the Plan which dictates in pertinent part:

You may claim benefits under this Plan for covered expenses incurred by you or a dependent which are due to injury or sickness caused by the negligence or wrong of a third party.

However, if there is a recovery (by you, your dependent, or personal representative) from the third party or his personal representative--whether by judgement, settlement, or otherwise--for the illness or injury, you must reimburse the Plan.

The amount of reimbursement will be equal to the lesser of:

a.  the amount of benefits paid under this Plan for the illness or injury or

b.  the recovered amount, less any necessary and reasonable expenditures (including attorney fees) you incur in effecting the recovery.

R. at 114-15.  In response George filed a two-count Complaint for Declaratory Judgment.  Count I sought a declaration that SIHO had "no interest" in the settlement between George and his insurance carrier.  Count II sought an alternative declaration of the amount by which SIHO's claim should be reduced because of comparative fault.  Thereafter George filed a motion for summary judgment related to count I only.  SIHO filed a cross-motion for summary judgment.  After conducting a hearing, the trial court granted George's motion and denied SIHO's motion.  This appeal followed.
(footnote: 3)
 We first observe that federal law controls the outcome of this case.  ERISA comprehensively regulates employee pension and welfare plans.  Title 29 U.S.C § 1002(1) defines an employee welfare benefit plan as any fund or program through which an employer provides employees with "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment."  Section 514(a) of ERISA preempts "any and all State laws in so far as they may now or hereafter relate to any employee benefit plan" covered by ERISA.  29 U.S.C. § 1144(a).  The United States Supreme Court has affirmed the broad preemptive scope of ERISA and the prohibition of even indirect state action relating to self-funded employee benefit plans.  
See
, 
e.g.
, 
Metropolitan Life Ins.  Co.  v.  Massachusetts
, 471 U.S. 724, 739, 105 S. Ct.  2380, 2388, 85 L. Ed.2d 728 (1985); 
Alessi v.  Raybestos-Manhattan, Inc.
, 451 U.S. 504, 525, 101 S. Ct.  1895, 1907, 68 L. Ed.2d 402 (1981).  "The express preemption provision of ERISA is deliberately expansive, and it is designed to 'establish pension plan regulation as exclusively a federal concern.'"  
Baxter By and Through Baxter v.  Lynn
, 886 F.2d 182, 185 (8th Cir.  1989) (citing 
Pilot Life Ins.  Co.  v.  Dedeaux
, 481 U.S. 41, 46, 107 S. Ct.  1549, 1552, 95 L. Ed.2d 39 (1987)).

SIHO contends the trial court erred in failing to defer to its interpretation of the Plan, namely: that SIHO was entitled to subrogation from the monies George received in settlement of his uninsured motorist claim.  In 
Firestone Tire and Rubber Co. v. Bruch
, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57, 103 L. Ed.2d 80 (1989) the Supreme Court established the rule that courts must apply a 
de
 
novo
 standard of review in actions brought by ERISA plan participants to challenge the denial of benefits 
unless
 the plan vests the plan administrator with discretionary authority to make eligibility determinations or construe the plan's terms.  When the plan so endows its administrator, the decision of the administrator must stand unless there is an abuse of discretion.  
Bruch
, 489 U.S. at 115.  It is only in those cases involving plans that have not vested their administrator with such authority that the court must follow traditional principles of trust law and construe a participant's claim "as it would have any other contract claim--by looking to the terms of the plan and other manifestations of the parties' intent."  
Id.
 at 112-13.

Federal courts have consistently applied the 
Bruch
 deference principles to actions concerning benefit determinations and in particular "claims involving ERISA plans' assertions of purported reimbursement and subrogation rights."  
Sunbeam-Oster Co. Group Ben. Plan v. Whitehurst
, 102 F.3d 1368, 1373 (5th Cir. 1996).  Accordingly, as applied to the facts in this case, if the Plan gives the administrator the discretion to interpret the meaning of the subrogation clause, then SIHO's interpretation is subject to an arbitrary and capricious standard of review.  However, if no such authority is provided for in the Plan, then  the dispute must be resolved by a 
de novo
 review of the Plan's terms and other manifestations of the parties' intent.  
See
 
Bruch
, 109 S. Ct. at 955.

In this case the Plan provides in part:

To administer claims, the Claims Administrator, without the consent of any person, will have the right
:

a.  
to give or to get any data needed to determine benefits under this provision
.

b.  
to recover any sum paid above required by this provision
.

c.  to reimburse an organization the sum it paid, but which should have been paid by the Claims Administrator.  Amounts so reimbursed will be deemed benefits paid under this Plan, and to the extent so paid there will be no more liability under this Plan.

R. at 112 (emphasis added).  The Plan also requires participants to provide SIHO with information necessary to process claims: "[c]laim forms must be completed in full and submitted along with satisfactory evidence (i.e. doctor bill, hospital bill, outpatient diagnostic X-ray and laboratory)."  R. at 126.  Because federal law controls the outcome of this case we rely on authority from the Seventh Circuit to inform our judgment concerning whether the foregoing language confers on SIHO a grant of discretion.  It is clear the Plan language does not contain an express grant of discretion to SIHO to determine eligibility or to construe Plan terms.  However, "'magic words (such as 'the committee has discretion to . . . ')'" are unnecessary to determine whether a plan's language constitutes a grant of discretion to the administrator.  
Petrilli v. Drechsel
, 910 F.2d 1441, 1447 (7th Cir. 1990).  Rather, a grant of discretion can be implied from the plan language. 
Bollenbacher v. Helena Chemical Co.
, 926 F. Supp. 781, 786 (N.D. Ind. 1996).  For example, in 
Patterson v. Caterpillar, Inc.
, the plan at issue provided that "'benefits will be payable only upon receipt by the Insurance Carrier or Company of such notice and such due proof, as shall be from time to time required, of such disability.'"  70 F.3d 503, 505 (7th Cir. 1995).  The court found that such language afforded the administrator discretion sufficient to justify an arbitrary and capricious standard of review.  
Id.
  In 
Donato v. Metropolitan Life Ins. Co.
, the court also applied the arbitrary and capricious standard.  19 F.3d 375, 380 (7th Cir. 1994).  The plan in that case provided that the administrator will pay disability benefits upon receipt of proof of claim and that "'[a]ll proof must be satisfactory to us.'"  
Id.
 at 377.  The court held that such language supported a discretionary standard of review.  In so doing, the court rejected the contention that a plan's language must contain an explicit grant of discretionary authority to justify a review under the arbitrary and capricious standard.  
Id.
 at 379.

In this case the Plan language affords SIHO the authority to "give or get any data needed to determine benefits . . ." and "to recover any sum paid . . . ."  R. at 112.  Such language does not mandate the acquisition of data or the recovery of sums paid.  Rather, it gives SIHO the discretionary authority to obtain data or to recover benefits paid.  Further, Plan language requiring participants to submit "satisfactory evidence" for payment of medical claims necessarily implies that SIHO must determine whether the evidence is in fact "satisfactory" and thus whether claims for benefits will be accepted or rejected.

Because the Plan affords the Administrator with discretion to determine eligibility benefits, we will reverse the trial court only if SIHO's decision to assert subrogation was arbitrary and capricious.  "Before concluding that a decision was arbitrary and capricious, a court must be very confident that the decision maker overlooked something important or seriously erred in appreciating the significance of the evidence."  
Patterson
, 70 F.3d at 505.  Questions of judgment are left to the administrator of the plan.  
Trombetta v. Cragin Fed. Bank Ownership Plan
, 102 F.3d 1435, 1438 (7th Cir. 1996), 
reh'g denied
.  Absent special circumstances such as fraud or bad faith, SIHO's decision "may not be deemed arbitrary and capricious so long as it is possible to offer a reasoned explanation, based on the evidence, for that decision."  
Id.

The question in this case is whether the Plan's language can reasonably be construed to include a participant's uninsured motorist coverage.  Representative argues that SIHO's decision fails to give effect to the clear language of the Plan which "permits subrogation only when a member is injured by a third party and subsequently makes a recovery from 'the third party'" who actually caused the injury.  
Brief of Appellee
 at 12.  According to Representative  the arbitrary and capricious standard does not permit SIHO to subrogate recoveries from anyone other than the person who actually caused the injury.  We disagree given the nature of the standard of review in this case.  The arbitrary and capricious standard of review is one which allows us to come to a different, yet altogether reasonable, conclusion.  
See
 
Van Boxel v. Journal Co. Employees' Pension Trust
, 836 F.2d 1048, 1052 (7th Cir. 1987) (stating that "the arbitrary and capricious standard may be a range, not a point").  Thus, it may be true that we would reach a conclusion different than the one reached here if the standard of review were 
de
 
novo
.  However, we need not and do not reach such a conclusion given the standard before us.

A number of cases have addressed plans with language sufficiently similar to the one here such that we conclude that SIHO's interpretation of the Plan was reasonable.  The cases have held that subrogation may include recovery from a plan participant's uninsured motorist coverage.  
See
, 
e.g.
, 
Wendy's Int'l Inc. v. Karsko
, 94 F.3d 1010 (6th Cir. 1996); 
Rhodes, Inc. v. Morrow
, 937 F. Supp. 1202 (M.D.N.C. 1996); 
Harmond v. Teamsters Joint Council No. 83
, 795 F. Supp. 783 (E.D. Va. 1992), 
aff'd
, 1 F.3d 1233 (4th Cir. 1993).  The court in 
Wendy's
 also addressed language comparable to that found in SIHO's plan stating in pertinent part:  "Had the [summary plan description] said that Wendy's has a right to monies collected only from the person who 'caused' the injury, this might be a closer case, since Nationwide certainly did not 'cause' the Karsko's loss."  
Wendy's
, 94 F.3d at 1013.  In such a scenario, the 
Wendy's
 court did not rule out subrogation.  Rather, the court merely concluded that the case may have been a closer one if the language of the plan were otherwise.  Even plans which contain less ambiguous terms are subject to a range of interpretations which would not be ruled out as completely unreasonable.  Here, we find the range of possible interpretations sufficient enough to warrant affirmance of SIHO's interpretation of the Plan.  Accordingly, summary judgment entered in favor of George is erroneous. We therefore reverse the trial court's judgment and remand this cause with instructions that summary judgment be entered in SIHO's favor.
(footnote: 4)
 Judgment reversed and cause remanded.

GARRARD, J., concurs.

SHARPNACK, C.J., dissents with opinion.

IN THE

COURT OF APPEALS OF INDIANA

SIHO,             )

)

Appellant-Defendant, )

)

vs. ) No. 03A05-9704-CV-148

)

ALICE G. GEORGE, As Executor Under the )

Last Will and Testament of Vernon L. George, )

Deceased, and As Personal Representative of )

the Estate of Vernon L. George, Deceased, )

)

Appellee-Plaintiff. )

SHARPNACK, C. J.
, 
Dissenting

I respectfully dissent with respect to the issue of whether the Plan Administrator's interpretation of the Plan was arbitrary or capricious.  I agree that the “question in this case is whether the plan’s language can reasonably be construed to include a participant’s uninsured motorist coverage.”  I believe, however, the plain language of the subrogation provision in the SIHO plan does not support an interpretation that permits subrogation as to uninsured motorist payments.

The language in issue follows:

"You may claim benefits under this plan for covered expenses incurred by you or a dependent which are due to injury or sickness caused by the negligence or wrong of 
a third party
.

However, if there is recovery (by you, your dependent, or personal representative) from 
the third party
 or his personal representative - whether by judgment, settlement, or otherwise - for the illness or injury, you must reimburse the plan."

Record, pp. 114-115 (emphasis added).  It is clear that the third party or his personal representative, described in the second paragraph, is the same third party described in the first paragraph whose negligence or wrong caused the injury.  In this case, the payment at issue was payment by George’s uninsured motorist carrier.  That payment is neither from nor on behalf of the third party.  It is a payment made in fulfillment of the contractual obligation between George and the insurer of the uninsured motorist policy.  SIHO's interpretation of this provision requires that the terms "a third party" and "the third party" be given different meanings.  

The facts in the cases relied upon in support of SIHO’s position are distinguishable from the facts before us.  Although the language in those cases supports the conclusions reached in those cases, the language in this Plan is not “sufficiently similar” to the language in those plans to support SIHO's interpretation.

First, in the 
Wendy’s
 case, the summary plan description provided:

"If you or a dependent incurs an injury or illness caused by the negligence or wrongdoing or a third party, the plan will cover those medical expenses.  However, if you are reimbursed or recover monies from the person responsible for the loss, the plan shall be reimbursed the total amount of the benefits paid by the plan, but such reimbursement shall not exceed the total proceeds of the recovery."

Wendy's
, 94 F.3d at 1011.  In addition, the plan's subrogation clause read as follows:

"With respect to benefits payable under this Plan, the Plan reserves the right to be reimbursed if a Participant or personal representative thereof
 recovers monies from a third party
 or a personal representative thereof whether by judgment, settlement or otherwise, 
on account of such Injury
 or Illness."

Id.
 (original emphasis).  The Sixth Circuit held that the administrator could reasonably interpret the word "responsible" to mean any person or insurance company legally obligated to the plan member under the circumstances.  
Id.
 at 1012-1013.  It found that the words "responsible for the loss" did not necessarily mean the same party as the third party who caused the injury.  
Id.
  It reasoned that the overall plan document permitted recovery from proceeds received from "a third party" and not just the party that caused the loss.  
Id.
 at 1013.  The court further reasoned:

"Had the [summary plan disposition] said that Wendy's had a right to monies collected only from the person who 'caused' the injuries, this might have been a closer case, since Nationwide certainly did not cause Karsko's loss.  The phrase 'person responsible for the loss' is much more ambiguous, however, and is therefore subject to a broader range of interpretations."

Id.
 

This language is broader than that contained in the SIHO plan, particularly with respect to the fact that there is no limitation of the definition of a third party.  The unmodified use of the term “third party” in the 
Wendy's
 case would include anyone.  In the SIHO plan, the third party is clearly the one whose negligence or wrong caused injuries.  In addition, SIHO's right to subrogation does not extend to any party 
responsible
 for the loss, but is limited to recoveries made from the party who 
caused
 the loss.  As noted in 
Wendy's
, an uninsured motorist carrier is not the party who caused the loss.  

Next, in 
Rhodes
, the language of the subrogation clause was as follows:

"The Covered Person, by accepting benefits under this Plan for an accidental bodily injury or illness for which such Covered Person may seek recovery from 
a third party
 or his personal representative, agrees, in the event of a recovery from such third person on account of such injury or illness, to pay the Plan Administrator an amount equal to the value of the benefits provided under this Plan on account of such injury or illness.  In the event of an accident which may give rise to a right of a Covered Person to recover from 
a third party
, the right to receive the benefits under this Plan shall be conditioned upon the Covered Person or his personal Representative delivering to the Plan a signed agreement to repay amounts recovered . . . ."

Rhodes
, 937 F. Supp. at 1210-1211 (emphasis added).  The court held that the term "a third party" meant any party from whom a recovery could be made, including an underinsurance carrier.  
Id.
 at 1214.  Again, the term “a third party” is broader than the one in the SIHO plan, and the specific language “which may give rise to a right of a Covered Person to recover from a third party” clearly would include an uninsured motorist carrier as a third party.

Finally, in the 
Harmond
 case, the subrogation clause read as follows:

"In the event the Fund pays benefits under any Plan to any Employee, Dependent, or assignee for injuries, expenses, or loss caused by negligence or wrongful act of a third party, the Fund shall be subrogated for the amount of such payment to all rights of the Employee or Dependent 
against any person, firm, corporation, or other entity as respects such injuries, expenses, or loss
."

Harmond
, 795 F. Supp. at 783-784.  The court held that the plan permitted subrogation to uninsured motorist benefits.  
Id.
 at 785. 

It seems quite clear that the broad language “any person, firm, corporation, or other entity as respects such injuries” is broad enough to include an uninsured motorist carrier, a liability carrier, or almost anyone else who has any obligation to pay the employee “as respects such injuries.”  The language in the 
Harmond
 case subrogation clause is not anything like the language in the SIHO plan.

As the majority noted, we will reverse the trial court only if SIHO's decision to assert subrogation was arbitrary or capricious.  
See
 
Patterson
, 70 F.3d at 505.  The Seventh Circuit has stated that a decision is arbitrary or capricious when it is "downright unreasonable."  
Donato
, 19 F.3d at 380.  Factors that bear on the reasonableness of a plan administrator's interpretation have been identified as:

"whether the interpretation contradicts the plan's clear language, whether the interpretation renders any plan language internally inconsistent or meaningless, whether the interpretation is consistent with earlier interpretations, whether the interpretation is consistent with the plan's goals, and whether the plan satisfies ERISA requirements." 

 

Kennedy v. Georgia-Pacific Corp.
, 31 F.3d 606, 609 (8th Cir. 1994). 

Here, SIHO's interpretation contradicts the Plan's clear language and renders the language internally inconsistent.  Therefore, because the interpretation is unreasonable, I would conclude that SIHO's decision to subrogate George's settlement was arbitrary and capricious.  
See
  
Donato
, 19 F.3d at 380.  As a result, I would affirm the trial court's granting of summary judgment in favor of George. 

FOOTNOTES
1:  29 U.S.C. § 1001 
et
 
seq
.

2:  Pursuant to an agreement with Cummins Engine Co., SIHO is empowered to pursue subrogation where it deems appropriate.  R. at 141.

3:  George died during the pendency of this appeal.  His wife Alice G.  George was appointed as Personal Representative of her husband's estate. 

4:  Representative also contends that in the alternative this cause should be remanded for trial on Count II of the complaint.  We decline to address the merits of Representative's contention for two reasons.  First, although the complaint was filed in two counts, the motion for summary judgment addressed only Count I.  A party may not assert one theory at the summary judgment stage of the proceeding and assert another theory on appeal.  
Brougher Agency, Inc. v. United Home Life Ins. Co.
, 622 N.E.2d 1013, 1018 (Ind. Ct. App. 1993), 
trans. denied
.  Second, because the parties argued and the trial court addressed only Count I of the complaint, we must presume Count II is still pending before the trial court.